UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RAHIM R. D., | ) | EDCV 20-236-AGR |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| ANDREW M. SAUL,<br>Commissioner of Social Security, | ) | |
| Defendant. | ) | |

Plaintiff[1] filed this action on February 5, 2020. On August 14, 2020, the parties filed a Joint Stipulation that addressed the disputed issues. The court has taken the matter under submission without oral argument.[2]

Having reviewed the entire file, the court reverses the decision of the Commissioner.

---

[1] Plaintiff's name has been partially redacted in compliance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 12, 13.)

# I.

# **PROCEDURAL BACKGROUND**

Plaintiff filed applications for disability insurance benefits and supplemental security income benefits, and alleged an onset date of November 12, 2015. Administrative Record ("AR") 25. The applications were denied initially and on reconsideration. AR 25, 118-19, 150-51. On October 4, 2018, the ALJ conducted a hearing at which Plaintiff and a vocational expert testified. AR 61-97. On January 15, 2019, the ALJ issued a decision denying benefits. AR 22-37. On December 16, 2019, the Appeals Council denied the request for review. AR 1-6. This action followed.

# II.

# **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

# III.

# DISCUSSION

## A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (citation and quotation marks omitted).

## B. The ALJ's Findings

The ALJ found that Plaintiff met the insured requirements through December 31, 2017. AR 27. Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[3] the ALJ found that, through the date last insured, Plaintiff had the severe impairments of status post craniectomy (2015) and cranioplasty (2016) secondary to gunshot wound to the head with residual left sided weakness; status post gunshot wound to the abdomen in 2018; seizure disorder; neurocognitive disorder; and substance abuse. AR 27.

The ALJ found that Plaintiff had the residual functional capacity to perform light work except that he could occasionally push/pull with the left lower extremity; and occasionally climb ramps and stairs, balance, stoop, kneel and crouch. With his nondominant left upper extremity alone, Plaintiff could never reach overhead, frequently reach in all other directions, and frequently handle and finger. Plaintiff could never crawl or climb ladders, ropes and scaffolds. Plaintiff cannot tolerate exposure to

---

[3] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

extreme cold, extreme heat, wetness, vibration, pulmonary irritants (*e.g.*, odors, dusts, fumes, gases, poor ventilation), and hazards such as unprotected heights and moving machinery. With respect to mental limitations, Plaintiff could understand, remember and carry out simple and repetitive tasks. He could not tolderate interaction with the public. He could tolerate occasional interaction with supervisors and coworkers, but not in a team or cooperative effort. AR 30.

The ALJ concluded that Plaintiff could not perform his past relevant work. AR 35. However, there are jobs – such as assembler, material distributor, and hand packager – that exist in significant numbers in the national economy that he could perform. AR 35-36.

### C. Residual Functional Capacity

The residual functional capacity ("RFC") assessment measures the claimant's capacity to engage in basic work activities. *Bowen v. New York*, 476 U.S. 467, 471 (1986). The RFC is a determination of "'the most [the claimant] can still do despite [the claimant's] limitations.'" *Treichler v. Comm'r*, 775 F.3d 1090, 1097 (9th Cir. 2014) (citation omitted). The RFC assessment must be supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

This case turns on the ALJ's RFC assessment that, "[w]ith his nondominant left upper extremity alone, he can never reach overhead, he can frequently reach in all other directions, and he can frequently handle and finger." AR 30. The vocational expert testified that there would be no jobs available if the hypothetical claimant, with the other limitations in the RFC assessment, could only occasionally reach in all other directions and could only occasionally handle and finger with the nondominant left upper extremity. AR 90.

For social security purposes, the term "occasionally" means up to one-third of an eight-hour workday (up to 2.66 hours), whereas the term "frequently" means from one-third to two-thirds of an eight-hour workday (up to 5.3 hours). Social Security Ruling 83-

10, 1983 SSR LEXIS 30, *13-*14 (Jan. 1, 1983).  The term "handling" means the ability to seize, hold, grasp or turn an object.  The term "fingering" means to pick or pinch. *See Sylvia L. P. v. Saul*, 2019 U.S. Dist. LEXIS 149874, *5 (C.D. Cal. Sept. 3, 2019).

The ALJ gave great weight to the state agency medical consultants, Dr. Vu and Dr. Subin.  AR 34.  A non-examining physician's opinion may serve as substantial evidence when it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  On June 3, 2016, Dr. Vu rendered an opinion as to Plaintiff's future RFC 12 months after onset (November 11, 2016).  AR 103.  Following a gunshot wound to the head on November 12, 2015, Plaintiff had cerebral trauma and major motor seizures.  AR 102.  Dr. Vu opined that Plaintiff will be able to do light work except that he could sit/stand/walk six hours in an eight-hour workday; occasionally push/pull with the left lower extremity; occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; and never climb ladders, ropes or scaffolds.  He must avoid concentrated exposure to extreme cold, extreme heat, wetness, vibration, fumes, odors, dusts, gases, poor ventilation; and hazards.  AR 103-05.  On reconsideration, Dr. Subin agreed with Dr. Vu's RFC assessment on October 19, 2016.  AR 125-26.

The ALJ did not rely on the state agency physicians for the RFC assessment for Plaintiff's left upper extremity.  The state agency physicians did not project any limitations for the left arm upper extremity.  The ALJ observed that Plaintiff's "continuing weakness in his left hand supports the manipulative limitations."  AR 34.  The state agency physicians did not have those subsequent medical records.

The ALJ's assessment that Plaintiff was capable of "frequently" reaching, handling and fingering with his left upper extremity after that date is not supported by substantial evidence.  Plaintiff was diagnosed with traumatic brain injury following a gunshot wound to the head on November 12, 2015.  AR 428, 532-35, 624.  He underwent craniectomy and remained on ventilation until November 15, 2015.  AR 458,

460. On December 4, 2015, Plaintiff was admitted to inpatient rehabilitation and was at "total assist" status. AR 464, 629. His left upper extremity was 0/5. His left lower extremity was 3/5 proximally and 0/5 with dorsiflexion. AR 629. On December 6, 2015, Plaintiff was in a wheelchair with a helmet. He had mild left-sided facial asymmetry and labial asymmetry, and right-sided lingual deviation. AR 433-34. On December 15, 2015, Plaintiff had impaired bladder and bowel management, impaired mobility, impaired self care and activities of daily living, impaired safety risk, and wound healing. AR 431, 436, 440-41, 443-81. Upon discharge on December 16, 2015, he had residual left side hemiparesis, spasticity, hyperreflexia, and facial droop. AR 525-26. He had residual cognitive deficits. AR 625. He had difficulties with activities of daily living, mobility, transfers, ambulation and cognition. He required a cane, helmut and minimal assistance with problem solving, bathing, dressing, shower transfer, memory, and wheelchair mobility. AR 529-30, 625, 698. Gross and fine motor coordination of the left hand was impaired. Plaintiff had limited grip and limited proximal strength. AR 696.

On April 26, 2016, Plaintiff was no longer in a wheelchair and ambulated with a cane. His sister had taken over his care because his girlfriend did not make his follow-up appointments or give him seizure medication. AR 754. His left arm was 4-/5 with spastic deltoid grip. His left ankle was 4-/5. AR 756. On May 24, 2016, Plaintiff had no cane and the same motor strength results. AR 758-59. On June 17, 2016, Plaintiff presented with a seizure after not taking his medication. He had extremity weakness, gait disturbance, memory impairment, and muscle weakness. AR 763. On July 5, 2016, Plaintiff presented with left sided arm and leg weakness, and was unable to walk without a cane. He could not return to work detailing cars. AR 772.

On August 5, 2016, Plaintiff underwent right-sided autologous bone cranioplasty. On August 6, Plaintiff had a partial seizure with left arm shaking. His left arm and leg had 4/5 strength. AR 853. After his medication was increased, he did not have more seizures. AR 851. A CT scan of his head indicated no significant change. Plaintiff had

stable intraparenchymal bullet fragments on the right with edema, and stable small amounts of pneumocephalus and trace right extra-axial fluid.  AR 844.  Upon discharge, Plaintiff was status post skull reconstruction and left side weakness due to brain injury.  AR 870.  His left wrist and elbow were contracted in flexion.  Left deltoid was 4-/5, tricep was 4-/5, and hand grip was 3/5.  Left hip flexion was 4-/5, knee extension was 4-/5, left foot droop dorsi flex 0/5 and extensor hallucis longus 2/5.  AR 869.

On October 26, 2016, Plaintiff was seen for a seizure after noncompliance with medication.  AR 1192.  On musculoskeletal examination, Plaintiff had normal range of motion, no deformity and no neurological deficit.  AR 1194.

Medical records dated February 23, 2017 indicate seizure disorder and left arm paralysis.  AR 972, 977.

On May 8, 2018, Plaintiff sustained a gunshot wound to the abdomen.  AR 894.  He had right rib fracture, acute Grade 4 laceration of the liver, and subcutaneous gas and air in the abdomen.  AR 909-10, 924-25, 929, 933.  On May 14, Plaintiff told a neurologist that his left side weakness had improved slightly over time, and he had breakthrough seizures if he forgot to take his medication or was under stress.  AR 913.  On examination, Plaintiff had 4/5 strength in his left shoulder, elbow, hip and plantar/dorsiflex; 3/5 strength in the left wrist; and 0/5 left finger extension.  AR 915.  Plaintiff was discharged two days later on May 16.  AR 917-18.  X-rays on June 11, 2018 indicated acute nondisplaced fractures of the right ninth and tenth ribs and near the axillary line.  AR 978.

On October 10, 2018, Plaintiff had a seizure after not taking Keppra.  AR 1000, 1002, 1046, 1066.  On October 10, Plaintiff was noted to have abnormal coordination, abnormal gait, and left side weakness.  AR 996.

Thus, the most recent testing in the record indicates 0/5 strength in the left finger, 3/5 strength in the left wrist, and 3/5 left hand grip strength.  Nothing in the record indicates Plaintiff could handle or finger with the left hand up to two-thirds of an eight-

hour workday. The ALJ noted that Plaintiff told the psychological consultative examiner that he is able to shower, dress, use a microwave, watch TV, roll and smoke marijuana, and drive short distances. AR 883, 886. These activities do not, however, support an ability to perform frequent – as opposed to occasional – handling, fingering and non-overhead reaching with the left upper extremity. The psychological examiner noted that Plaintiff had an unsteady gait, dropped his foot during ambulation, did not use his left arm during testing, and appeared to have left side weakness and poor use of the left hand. AR 886, 889.

The decision whether to remand for further proceedings is within the discretion of the district court. *Treichler*, 775 F.3d at 1099. When there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* at 1101. However, where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id*.

The vocational expert testified that, if the claimant were limited to occasional handling, fingering and non-overhead reaching, there would not be jobs available with the rest of the limitations in the RFC assessment. There do not appear to be any outstanding issues to be resolved before a determination of disability can be made.[4] Accordingly, the matter will be remanded for an award of benefits.

---

[4] It is unnecessary to reach any other issues raised by Plaintiff.

# IV.

# ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is reversed and remanded for an award of benefits.

DATED: February 26, 2021

_____
ALICIA G. ROSENBERG
United States Magistrate Judge